CITY OF NILES, APPELLANT, *v.* HOWARD, APPELLEE.

[Cite as Niles *v.* Howard (1984), 12 Ohio St. 3d 162.]

(No. 83-1151—Decided July 25, 1984.)

*Messrs. Westenfield & Neuman* and *Mr. Douglas J. Neuman,* for appellant.

*Mr. David Hazelkorn,* for appellee.

*Mr. Bruce A. Campbell,* urging affirmance for *amicus curiae,* American Civil Liberties Union of Ohio Foundation, Inc.

*Per Curiam.* The city of Niles raises two issues in its appeal. First, the city argues that the drug laws of the state of Ohio are not general laws and, therefore, are outside the purview of Section 3, Article XVIII of the Ohio Constitution. Section 3, Article XVIII sets forth that:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police,

"* * *

sanitary and other similar regulations, *as are not in conflict with general laws.*" (Emphasis added.)

If the city were correct in asserting that the drug laws are not general laws, then Section 513.03[3] would not be unconstitutional. We are not, however, persuaded by this particular argument of the city.

This court in *Village of West Jefferson v. Robinson* (1965), 1 Ohio St. 2d 113, 118 [30 O.O.2d 474], found that:

"The words 'general laws' as set forth in Section 3 of Article XVIII of the Ohio Constitution mean statutes setting forth police, sanitary or other similar regulations and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations." See, also, *Eastlake v. Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363, 368 [20 O.O.3d 327].

The drug laws of the state of Ohio are clearly statutes setting forth police regulations and are, therefore, "general laws." Those laws which are not general laws are statutes which merely grant or limit the legislative powers of a municipal corporation to adopt or enforce police regulations.

Finding that the drug statutes involved are "general laws" within the meaning of Section 3, Article XVIII, this court must determine whether the city, by amending Section 513.03, has brought that section into conflict with the "general laws." One of the earliest cases written by this court which discussed whether municipal ordinances which differ from state statutes were in conflict with such statutes was *Struthers v. Sokol* (1923), 108 Ohio St. 263.

---

[3] "513.03 DRUG ABUSE: CONTROLLED SUBSTANCE POSSESSION OR USE.

"(a) No person shall knowingly obtain, possess or use a controlled substance.

"(b) This section does not apply to manufacturers, practitioners, pharmacists, owners of pharmacies and other persons whose conduct was in accordance with Ohio R.C. Chapters 3719, 4715, 4729, 4731 and 4741. This section does not apply to any person who obtained the controlled substance pursuant to a prescription issued by a practitioner, where the drug is in the original container in which it was dispensed to such person.

"(c) Whoever violates this section is guilty of drug abuse:

"(1) If the drug involved is a compound, mixture, preparation or substance included in Schedule III, IV or V, drug abuse is a misdemeanor of the third degree, and if the offender has previously been convicted of a drug abuse offense, drug abuse is a misdemeanor of the second degree.

"(2) If the drug is marihuana and the amount is less than a bulk amount as defined in Section 513.01(s)(3), drug abuse is a misdemeanor of the first degree."

"501.99 PENALTIES FOR MISDEMEANORS.

"(a) Whoever is convicted of or pleads guilty to a misdemeanor shall be imprisoned for a definite term or fined, or both, which term of imprisonment and fine shall be fixed by the court as provided in this section:

| "Classification of Misdemeanor | Maximum term of Imprisonment | Maximum Fine |
|---|---|---|
| "First degree<br>"\* \* \* | 6 months | $1,000.00 |
| "Minor<br>"\* \* \*" | No imprisonment | 100.00. |

In its analysis of what constitutes such a conflict this court in *Sokol, supra,* at paragraph two of the syllabus, held:

"In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa."

The court further held in part:

"A police ordinance is not in conflict with a general law upon the same subject merely * * * because different penalties are provided for the same acts, even though greater penalties are imposed by the municipal ordinance." *Id.* at paragraph three of the syllabus.

This court has decided the issue involved herein on several occasions. In *Toledo* v. *Best* (1961), 172 Ohio St. 371 [16 O.O.2d 220], this court held:

"Where the only distinction between a state statute and a municipal ordinance, proscribing certain conduct and providing punishment therefor, is as to the penalty only but not to the degree (misdemeanor or felony) of the offense, the ordinance is not in conflict with the general laws of the state. * * *" See, also, *Dayton* v. *Miller* (1951), 154 Ohio St. 500 [43 O.O. 433] and *Greenburg* v. *Cleveland* (1918), 98 Ohio St. 282.

The case upon which appellee places heavy reliance is *Cleveland* v. *Betts* (1958), 168 Ohio St. 386 [7 O.O.2d 151]. In *Betts* the court was asked to determine whether a city of Cleveland ordinance, which imposed a misdemeanor penalty for possession of a concealed weapon, was in conflict with the general laws of the state of Ohio, which defined the same offense as a felony. The Cleveland ordinance was found unconstitutional because it altered the degree of the offense from felony to misdemeanor.

When a municipal ordinance varies in punishment with the state statute such ordinance is not in conflict with the statute when it only imposes a greater penalty. If the Niles ordinance had altered the degree of punishment to a felony rather than a misdemeanor it would have been unconstitutional. However, since the ordinance only increased the penalty from a lesser misdemeanor to a first degree misdemeanor, it is not in conflict with the general laws of Ohio.

It is therefore the decision of this court that the judgment of the court of appeals be reversed.

*Judgment reversed.*

CELEBREZZE, C.J., O'NEILL, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

SWEENEY, J., dissents.

O'NEILL, J., of the Seventh Appellate District, sitting for W. BROWN, J.

SWEENEY, J., dissenting. The majority's holding renders meaningless

the constitutional directive that "local police, sanitary and other similar regulations" are valid only insofar as they "are not in conflict with general laws." If the municipal ordinance in question in the instant case is not "in conflict" with the general laws of this state, it is difficult to conceive of an instance when such a conflict would arise.

R.C. 2925.11(C)(3) makes the possession of less than one hundred grams of marihuana a minor misdemeanor, which, pursuant to R.C. 2929.21(D), is punishable *only by a fine* of not more than $100. R.C. 2925.11(D) further provides, with specificity, that "[a]rrest or conviction for a minor misdemeanor violation of this section does not constitute a criminal record and need not be reported by the person so arrested or convicted in response to *any* inquiries about the person's criminal record * * *." (Emphasis added.)

The ordinance enacted by the city of Niles makes the possession of any amount of marihuana in less than a bulk amount a misdemeanor of the first degree, which is punishable by imprisonment of up to six months and a fine of up to $1000. A conviction under this ordinance would constitute a "criminal record," which would have to be reported in response to inquiries contained in employment and license applications or made in connection with a person's appearance as a witness.

The "conflict" between R.C. 2925.11 and the Niles ordinance is readily apparent. Under the state statute, a person convicted of possession of one marihuana cigarette would receive no more than a $100 fine and have no criminal record. That same individual, however, if arrested inside the Niles city limits, would be subject to imprisonment of up to six months and a fine of up to $1000, while also being saddled with a criminal record. It is not necessary to engage in any legal or lexical manipulations to see that the Niles ordinance has thwarted the legislative intent behind R.C. 2925.11.

The General Assembly, after a thorough review and debate, determined that citizens who were otherwise law-abiding should not be deprived of their liberty or burdened with a criminal record that could effectively deprive them of career and employment opportunities, solely because they were arrested for possession of a small amount of marihuana. The Niles ordinance, however, appears to have been part of a "shotgun" approach to law enforcement that ignores the reasoned approach of the General Assembly. According to appellant, the Niles City Council passed the ordinance in question after hearing testimony from the Detective Bureau of the Niles City Police Department that approximately sixty percent of all crimes committed in Niles were "drug related." This testimony was not based upon a scientific study, and it apparently did not address the specific impact that the possession of marihuana itself had upon criminal activity in Niles. Further, counsel for the city stated in oral argument that there was no evidence indicating that Niles' drug or marihuana "problem" was any more severe than that of any other municipality in the state.

Relying upon a general statement set forth by this court in 1923, *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, the majority creates an unbend-

able rule that municipalities are always permitted to increase the penalty associated with an offense, so long as those offenses called "misdemeanors" are not increased to offenses called "felonies."[4] By focusing on whether the municipality has changed the "name" of the offense, however, the majority blatantly ignores the substantive impact that each municipal ordinance may have. According to the majority, a conflict between an ordinance and a general law will arise only if the ordinance places a different label on the offense than that placed on the offense by the General Assembly. Thus, the court finds that a "conflict" exists between a local ordinance and a general law if a misdemeanor in the first degree under state law (maximum six months' imprisonment and $1000 fine) is converted by municipal ordinance to a felony in the fourth degree (minimum penalty of eighteen months' imprisonment and a $2500 fine).

It is absurd to think that any less of a conflict exists when an ordinance converts a minor misdemeanor under state law (maximum $100 fine and no criminal record) to a misdemeanor in the first degree (maximum six months' imprisonment and $1000 fine). Yet, the majority apparently concludes that the variation between a "parking-ticket" type of penalty under state law and a penalty under a local ordinance, which results in both a deprivation of liberty and the attachment of stigma associated with a criminal record, does not result in a conflict since these penalties both arise from offenses that are classified under a heading that contains the word "misdemeanor." Query whether the majority would have reached the same result if the offense in question had been classified by the General Assembly as an "O'Henry" rather than a "minor misdemeanor"?

The case before us today is not a "marihuana case." The issues presented directly involve the constitutional balance between the authority of the General Assembly and the authority of municipal government. The majority attempts to distinguish *Cleveland* v. *Betts* (1958), 168 Ohio St. 386 [7 O.O.2d 151], in which we addressed this balance of authority, by finding that *Betts* does no more than draw a line between felonies and misdemeanors, over which a city ordinance cannot cross without being in conflict with a general law. This shallow analysis misses the thrust of the *Betts* opinion which sought to prevent "the kind of conflict contemplated by [Article XVIII, Section 3 of] the Constitution." *Betts, supra,* at 389. *Betts* noted that the general guidance provided by the court in *Struthers* v. *Sokol, supra,* for determining the constitutional validity of municipal ordinances was not the only applicable "test" in these cases. *Betts* made clear that the constitutionality of an ordinance cannot be determined by application of narrow rules or artificial tests, but must be determined according to the actual impact that an ordinance has in comparison with state law.

---

[4] The majority cites several other cases in support of the proposition that municipalities may freely increase the penalty for an offense. However, none of these cases involved an increase from a minor misdemeanor penalty to a misdemeanor penalty.

By its holding, the majority effectively strips the General Assembly of its authority to "decriminalize" certain offenses which it finds to be of lesser severity. Municipalities are now granted the authority to convert any minor misdemeanor into a misdemeanor in the first degree; and, as a result, uniformity in the application of criminal laws and penalties in Ohio will be diminished. Individuals traveling on our highways under the belief that their conduct is not punishable by imprisonment will suddenly find themselves inside the boundaries of a municipality, like Niles, where their conduct is punishable by six months in jail. Having no notice of the "recriminalization" of their activities upon entering the city limits, certain of these individuals undoubtedly will be arrested and convicted under these municipal ordinances. These individuals will face imprisonment, be burdened with a criminal record, and potentially suffer from a loss of employment or even a destroyed career,[5] while their counterparts outside the city limits merely will receive a citation and no more than a $100 fine. This scenario technically may not "qualify" as a deprivation of either due process or equal protection, but it clearly is highly inequitable.

The ramifications of the majority's holding are manifold, and they should not be lightly passed over. First, the constitutionality of municipal ordinances imposing criminal penalties apparently is now to be determined according to the label (felony or misdemeanor) placed on the offense prohibited. Second, the citizens of the state will be wise if they begin to research the laws of each city that they intend to pass through prior to traveling along our highways; otherwise, they may find themselves "serving time" for an act that they believed to be "decriminalized." Last, the General Assembly will no longer be able to effectively "decriminalize" specific conduct on a state-wide basis, unless it is willing to *truly* decriminalize that conduct (*i.e.,* remove *all* criminal penalties for previously prohibited conduct).

Because the majority has declined to seriously consider the foregoing ramifications of its decision, and because the Constitution of Ohio was never intended to be applied in the manner adopted by the majority, I must dissent.

---

[5] Certain individuals, if convicted of a first-degree misdemeanor, could be faced with the suspension or permanent loss of their license to practice in their chosen profession.