[Cite as *State v. Thomas*, 2010-Ohio-1548.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 08-MA-226 |
| | ) | |
| JERMAINE THOMAS, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Court of Common
                              Pleas of Mahoning County, Ohio
                              Case No. 06CR00455

JUDGMENT:                     Affirmed

APPEARANCES:
For Plaintiff-Appellee        Paul Gains
                              Prosecutor
                              James E. MacDonald
                              Assistant Prosecutor
                              21 W. Boardman Street, 6th Floor
                              Youngstown, Ohio 44503-1426

For Defendant-Appellant       Attorney David L. Engler
                              100 DeBartolo Place, Suite 315
                              Boardman, Ohio 44512

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 30, 2010

DONOFRIO, J.

{¶1} Defendant-appellant Jermaine Thomas appeals his conviction in the Mahoning County Common Pleas Court for cocaine and heroin possession. The central issue is the trial court's decision overruling his motion to suppress the drugs found on his person.

{¶2} The events leading to Thomas's arrest occurred in the Westlake Terrace housing project located in Youngstown, Ohio. (Tr. 4.) The housing project is part of the Youngstown Metropolitan House Authority (YMHA) which leases apartments to tenants. (Tr. 4, 7.) YMHA property is a posted no trespassing site. (Tr. 7.) Pursuant to the YMHA's rules, tenants are required to escort any visitors to and from the parking lot. (Tr. 7-8, 23.) Consequently, anyone on the property is subject to being asked for identification in order to determine whether they are permitted on the property. (Tr. 8, 27-28, 29.) Police have the discretion to issue a verbal or written warning for criminal trespass to any unescorted non-tenants found on YMHA property. (Tr. 8, 29, 44.) After the police issue a written warning to a trespasser, they forward a copy of it to the YMHA which maintains a criminal trespass list of those persons that have been warned to stay off the property. (Tr. 9, 38.) Officers assigned to patrol YHMA's property carry the trespass list in the trunk of their car along with copies of the written warnings. (Tr. 42.) After being issued a written warning, if the police encounter the person on YMHA property again, they are typically arrested and issued a citation for fourth-degree misdemeanor criminal trespass. (Tr. 8, 11, 38, 44, 46.)

{¶3} In 2006, the Griffith Street 520 parking lot area near apartment building 218 of the Westlake Terrace housing project was considered a high crime area and was the subject of continuous complaints about illegal drug activity and weapon sales. (Tr. 4.) Police had made a large number of drug and weapon arrests in that area. (Tr. 5, 28.)

{¶4} On or about April 18, 2006, Thomas had parked his white Cadillac in the lot. Loud music coming from Thomas's vehicle attracted the attention of

Youngstown Police Officer Patrick Mulligan who verbally warned Thomas about being in that area. (Tr. 8, 41.)

**{¶5}** A week later on April 25, 2006, Officer Mulligan and Detective Sergeant Kevin Mercer, both assigned to the street crimes unit, were patrolling the same area when they saw Thomas's white Cadillac, again parked in the Griffith Street 520 lot area near apartment building 218. (Tr. 4, 10, 36.) The car was backed into a parking spot near a trash dumpster. (Tr. 4, 8, 37.) Officer Mulligan told Det./Sgt. Mercer about warning Thomas the week earlier. (Tr. 5, 8, 20, 22-23, 25-26.) Thomas was seated on the driver's side of the car and his brother, Dwayne Thomas, was seated on the passenger's side. (Tr. 5, 19, 43.)

**{¶6}** As Det./Sgt. Mercer approached the driver's side of the car, he could tell that Thomas and Dwayne were moving their hands beneath window level in the console area of the car. (Tr. 5, 16.) Because it was a high crime area and Det./Sgt. Mercer himself had made numerous arrests for drugs and weapons in the area, he asked Thomas to step from the car in order to conduct a patdown search to check for weapons and ensure officer safety. (Tr. 5-6, 16-17.) Det./Sgt. Mercer asked Thomas if he had any drugs or weapons on him and he volunteered that he had a bag of marijuana on him. (Tr. 6, 18-19.) At that point, Det./Sgt. Mercer handcuffed Thomas and told him he was under arrest for marijuana possession. (Tr. 6.) In a search incident to that arrest, Det./Sgt. Mercer recovered seven bindles of heroin from the right rear pocket of Thomas's pants and the marijuana from the left front pocket. (Tr. 6.) Det./Sgt. Mercer also recovered money from his coat pocket and pants pocket. (Tr. 6.) When Det./Sgt. Mercer attempted a patdown of his waistband area, Thomas pulled away insisting the search was illegal. (Tr. 6.) Suspecting that Thomas had something concealed in that area, Det./Sgt. Mercer searched the area as best he could, including shaking Thomas's pants, but nothing fell out. (Tr. 6.) Det./Sgt. Mercer cautioned Thomas that if he was concealing any more drugs that he also would be charged with conveyance into a jail. (Tr. 7.) Thomas continued to deny that there was anything there. (Tr. 7.)

**{¶7}** When they arrived at the county jail, Det./Sgt. Mercer again cautioned Thomas about carrying drugs in to jail. (Tr. 7.) Thomas again denied that he had anything there. (Tr. 7.) Det./Sgt. Mercer relayed his suspicions to the deputies at the jail. (Tr. 7.) When a deputy conducted a more thorough search of Thomas, he discovered a large chunk of crack cocaine in his waistband/groin area. (Tr. 7.)

**{¶8}** On May 25, 2006, a Mahoning County grand jury indicted Thomas on one count of cocaine possession, in violation of R.C. 2925.11(A)(C)(4)(e), a first-degree felony, and one count of heroin possession, a violation of R.C. 2925.11(A)(C)(6)(a), a fifth-degree felony. (Docket 2.) Both counts carried a forfeiture specification under R.C. 2925.42. Thomas retained counsel, pleaded not guilty, and the case proceeded to discovery and other pretrial matters.

**{¶9}** On July 11, 2006, Thomas's attorney filed a motion to suppress. (Docket 13.) The short, two-page motion was devoid of any factual or legal basis. Also, the motion was inexplicably directed to physical evidence seized from Thomas's car. But, based on the record before this court, no evidence was taken from Thomas's car and the charges were based solely on evidence discovered on his person. Characterizing it as a "generic" motion that could apply to any warrantless stop and search conducted by the Youngstown Police Department, the state responded with a motion to strike Thomas's motion to suppress arguing that the motion lacked any notice as to what Thomas sought to suppress or the reasons for doing so, citing *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889. (Docket 29.)

**{¶10}** The trial court held a hearing on Thomas's motion to suppress on August 2, 2007. Det./Sgt. Mercer and Officer Mulligan both testified. Officer Mulligan testified about his first encounter with Thomas and the warning he gave him. Det./Sgt. Mercer testified about YMHA's rules, their encounter with Thomas a week later, and the discovery of the drugs on his person. Photographs of the area where Thomas's car was parked, a copy of YMHA's lease agreement, and a copy of YMHA's criminal trespass list were all admitted as evidence. Thomas's name

appears on the YMHA's criminal trespass list as having been warned on July 19, 2005. (Joint Exhibit 7.)

**{¶11}** Thomas testified that he was just driving through the area when he spotted his brother and stopped to talk to him. (Tr. 49-50.) While there, someone else asked Thomas to wait to give Thomas's girlfriend's sister a ride to the store. (Tr. 50-52.) He alleged that when approached by Det./Sgt. Mercer, he told him that he was waiting for someone. (Tr. 52.) He denied that he told Det./Sgt. Mercer that he had marijuana on him. (Tr. 53.) He explained that having spent almost nine years in the penitentiary he would never volunteer such information to the police because he knew it would surely lead to his arrest. (Tr. 53-53.) Thomas acknowledged that both he and his brother were not tenants at YMHA. (Tr. 50, 59.)

**{¶12}** Following submission of post-hearing briefs on the motion, the trial court overruled Thomas's motion on December 7, 2007. (Docket 40.) The court held that the police officers had probable cause to approach the vehicle and conduct a limited *Terry* search of Thomas. Once Thomas admitted to being in possession of marijuana coupled with his being on YMHA's no trespass list, the court concluded that the officers were justified in arresting Thomas and searching him incident to that arrest.

**{¶13}** On February 28, 2008, Thomas filed a motion for reconsideration arguing that the court erroneously relied on YMHA's criminal trespass list in justifying the officers' initial stop. (Docket 43.) Indeed, when Det./Sgt. Mercer and Officer Mulligan approached Thomas, they testified that they were not relying on that list as a basis to approach Thomas. (Tr. 19, 26, 32.)

**{¶14}** On April 2, 2008, the trial court overruled the motion for reconsideration, noting that there was adequate probable cause despite the officers' nonreliance on the YMHA's criminal trespass list. (Docket 45.) The court noted that there was testimony that YMHA's rules allow for all persons on YMHA property to be asked for identification, that the area where Thomas was parked was a high crime area, and that Thomas and his brother were making furtive movements in the car.

**{¶15}** On August 29, 2008, the state and Thomas entered into a Crim.R. 11 plea agreement. (Docket 50.) In exchange for a state-recommended three-year prison sentence, Thomas retracted his former pleas of not guilty and entered pleas of no contest to the charges in the indictment along with the forfeiture specifications.

**{¶16}** On November 3, 2008, the trial court held a sentencing hearing and sentenced Thomas to three years in prison on each count to be served concurrently. (Docket 55.) This timely appeal followed.

**{¶17}** Thomas raises two assignments of error. Thomas's first assignment of error states:

**{¶18}** "The Trial Court erred in ruling on Defendant/Appellee's [sic] Motion to Suppress in determining that there was probable cause to move beyond an investigatory stop and to search the Defendant's person for contraband beyond insuring there was not a weapon."

**{¶19}** The standard of review in an appeal of a suppression issue is two-fold. *State v. Dabney,* 7th Dist. No. 02BE31, 2003-Ohio-5141, at ¶9, citing *State v. Lloyd* (1998), 126 Ohio App.3d 95, 100-101, 709 N.E.2d 913. Since the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802. However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. Id., citing *State v. Clayton* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906. This determination is a question of law of which an appellate court cannot give deference to the trial court's conclusion. Id., citing *Lloyd.*

**{¶20}** As a preliminary matter and as highlighted by the state, a review of Thomas's suppression motion reveals that it is questionable whether it set forth a sufficient legal and factual basis to challenge the search and seizure. But, since the trial court held a full hearing on the motion and addressed all the matters presently

before this court, we will proceed to address the substantive arguments presented.

**{¶21}** For a search or seizure to be reasonable under the Fourth Amendment, it generally must be based upon probable cause and executed pursuant to a warrant. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. But, the law does allow for reasonable police searches and seizures in certain circumstances such as the investigatory stop. A police officer may make a brief, warrantless, investigatory stop without probable cause when the officer has a reasonable suspicion that the individual is or has been involved in criminal activity. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Reasonable suspicion means that the investigating officer must be able to point to specific, articulable facts that, when coupled with any rational inferences that may be drawn from those facts, warrant the investigation. Id. Moreover, during such an encounter, an officer is authorized to perform a limited patdown search for weapons as a safety precaution if there is a reasonable suspicion that the person stopped may be armed and dangerous. Id.

**{¶22}** The reasonableness of a *Terry* stop is based on the totality of the circumstances. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. Additionally, these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. Id. at 87-88, 565 N.E.2d 1271.

**{¶23}** In this case, Det./Sgt. Mercer was legally justified in initially approaching Thomas. He had reasonable suspicion to believe he was criminally trespassing on YMHA property. Criminal trespass, a fourth-degree misdemeanor, is defined as when a person, without privilege to do so, does any of the following:

**{¶24}** "(1) Knowingly enter or remain on the land or premises of another;

**{¶25}** "(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;

{¶26} "(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

{¶27} "(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either." Youngstown Codified Ordinance 541.05(a)(1)-(4),(d); R.C. 2911.21(A)(1)-(4),(D)(1).

{¶28} Det./Sgt. Mercer testified that YMHA property is a posted no trespassing site. (Tr. 7.) He also testified that pursuant to the YMHA's rules, tenants are required to escort any visitors to and from the parking lot and anyone on the property is subject to being asked for identification in order to determine whether they are permitted on the property. (Tr. 7-8, 23, 27-28, 29.) He also testified that Officer Mulligan, who was with him as they encountered Thomas, informed him of warning Thomas a week earlier about being on the property. (Tr. 5, 8, 20, 22-23, 25-26.) Thomas acknowledged that neither he nor his brother were a YMHA tenant. (Tr. 50, 59.) Thomas's presence on YMHA's property easily fits into any of the four subsections set forth above. Therefore, Det./Sgt. Mercer had reasonable suspicion to believe that Thomas was criminally trespassing on YMHA property. Indeed, although he was not charged, Thomas's presence there was enough to constitute probable cause to arrest him for criminal trespass.

{¶29} Det./Sgt. Mercer also had a reasonable suspicion to conduct a patdown search of Thomas for weapons. Det./Sgt. Mercer testified that the area where Thomas was found trespassing was considered a high crime area and was the subject of continuous complaints about illegal drug activity and weapon sales. (Tr. 4.) He himself had made a large number of drug and weapon arrests in that area. (Tr. 5, 28.) "'The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely in determining whether an investigative

stop is warranted. *United States v. Magda* (C.A.2, 1976), 547 F.2d 756, 758, certiorari denied (1977), 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157; *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 884-885, 95 S.Ct. 2574, 2581-2582, 45 L.Ed.2d 607; *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859. Cf. *United States v. White* (C.A.D.C.1981), 655 F.2d 1302, 1304: 'Past incidents of numerous law violations of a particular character definitely constitute a fact that officers may consider in the totality of circumstances they rely upon in arriving at a conclusion that they have probable cause to make an arrest.' '* * * [T]he "high-crime" character of an area is a relevant factor, in determining probable cause.' *Id.* See, also, *United States v. Thomas* (C.A.D.C.1976), 551 F.2d 347, 348; *United States v. Brown* (C.A.D.C.1972), 463 F.2d 949, 950; and *United States v. Davis* (C.A.D.C.1972), 458 F.2d 819." *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489.

**{¶30}** Also, as Det./Sgt. Mercer approached the driver's side of the car, he observed Thomas and his brother making what the trial court characterized as "furtive movements" beneath window level in the console area of the car. (Tr. 5, 16.) A furtive gesture may be defined as a situation where "police see a person in possession of a highly suspicious object or some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband and then observe that person make an apparent attempt to conceal that object from police view[.] * * *" 2 LaFave, Search and Seizure (1987) 58, Section 3.6(d) (footnotes omitted). Regarding furtive movements, the Ohio Supreme Court has noted that they alone are not sufficient to justify the search of an automobile without a warrant. *State v. Kessler* (1978), 53 Ohio St.2d 204, 208, 373 N.E.2d 1252. However, they are "factors" which may contribute to an officer's reasonable suspicion that a suspect is armed or engaged in criminal activity. *Bobo,* supra.

**{¶31}** Moreover, as already indicated, there existed probable cause to arrest Thomas for criminal trespass and Det./Sgt. Mercer would have been justified in searching Thomas incident to an arrest for that offense if he had chosen to do so.

**{¶32}** Nonetheless, it was not a *Terry* patdown search which yielded the

contraband, but a lawful search incident to Thomas's arrest for marijuana that yielded the drugs which formed the basis of the charges against Thomas. Before Det./Sgt. Mercer could conduct the previously justified *Terry* patdown, Thomas admitted to being in possession of marijuana. Det./Sgt. Mercer placed Thomas under arrest for marijuana and then proceeded to search him and recover the marijuana and the other drugs incident to that arrest. *Chimel v. Califorinia* (1969), 395 U.S. 753, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685.

{¶33} In sum, based on the totality of the circumstances, there was a reasonable suspicion to support an investigatory stop of Thomas pursuant to *Terry*. Those circumstances include that it was a high crime area, Thomas's furtive movements, and that Thomas was criminally trespassing on YMHA property. Further, once Thomas told Det./Sgt. Mercer that he was in possession of marijuana, Det./Sgt. Mercer then had probable cause to arrest Thomas for first-degree misdemeanor possession of marijuana. Youngstown Codified Ordinance 513.03(a)(c)(2). Det./Sgt. Mercer was then also justified in conducting a search of Thomas's person incident to the arrest for the marijuana which yielded the other drugs that led to his indictment in this case. Thus, the trial court properly overruled Thomas's motion to suppress.

{¶34} Accordingly, Thomas's first assignment of error is without merit.

{¶35} Thomas's second assignment of error states:

{¶36} "The Trial Court erred in failing to suppress evidence seized as result of a minor misdemeanor non-jailable offense."

{¶37} In support of his second assignment of error, Thomas cites R.C. 2935.26(A). Under R.C. 2935.26(A), a police officer is not allowed to arrest a person for a minor misdemeanor and instead must issue a citation, unless one of four exceptions is met. Although this is an accurate statement of the law, it is inapplicable in the case.

{¶38} Det./Sgt. Mercer placed Thomas under arrest for possession of marijuana. Possession of marijuana is a minor misdemeanor under the Ohio

Revised Code. R.C. 2925.11(A)(C)(3)(a). However, possession of marijuana is a first-degree misdemeanor under Youngstown Codified Ordinance 513.03(a)(c)(2). The Ohio Supreme Court has found such city ordinances to be constitutional, despite the difference in the degree of misdemeanor. *City of Niles v. Howard* (1984), 12 Ohio St.3d 162, 466 N.E.2d 539. Youngstown Police Officers have the discretion to arrest under either the Ohio Revised Code or the Youngstown Codified Ordinance. (Tr. 21.) Moreover, aside from the marijuana possession, there was sufficient evidence that would have justified Thomas's arrest for criminal trespass, which is a fourth-degree misdemeanor under Youngstown Codified Ordinance 541.05(d) and R.C. 2911.21(D)(1).

{¶39} Accordingly, Thomas's second assignment of error is without merit.

{¶40} The judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.