[Cite as *State v. Monegan*, 2023-Ohio-2130.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
|  | : |  |
|  | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Andrew J. King, J. |
| -vs- | : |  |
|  | : | Case No. 22CA45 |
|  | : |  |
| TROY MONEGAN | : |  |
|  | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
of Common Pleas, Case No.
2020CR0662

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     June 26, 2023

APPEARANCES:

For Plaintiff-Appellee:

GARY BISHOP
RICHLAND CO. PROSECUTOR
TERI BURNSIDE
38 South Park St., Second Floor
Mansfield, OH 44902

For Defendant-Appellant:

JONATHAN M. MCGOOKEY
KADEMENOS, WISEHART, HINES,
DOLYK, & WRIGHT CO. LPA
502 W. Washington St.
Sandusky, OH 44870

*Delaney, J.*

{¶1}  Appellant Troy Monegan appeals from the June 2, 2022 Sentencing Entry of the Richland County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}  The following facts are adduced from the records of two separate evidentiary suppression hearings. The suppression hearing of May 19, 2021 is cited as Suppression I, and the suppression hearing of January 26, 2022 is cited as Suppression II.

*Suppression hearing of May 19, 2021*

{¶3}  This case arose on May 19, 2020, when Ptl. Adamescu of the Mansfield Police Department was eastbound on Park Avenue, approaching the intersection of South Diamond and Park Avenue East when he observed an SUV run a red light. The parties stipulated the SUV ran a red light and Adamescu had probable cause for a traffic stop. T. Suppression I, 14.

{¶4} Appellee introduced evidence of Adamescu's dashcam video at the hearing. Adamescu initiated a traffic stop by activating lights and sirens, but the SUV did  not immediately pull over, passing two parking lots on the right in which it could have stopped. Eventually, the vehicle pulled over, but the officer deemed the slow stop suspicious.

{¶5} The SUV contained three people: a female driver, a female front-seat passenger, and one male passenger (appellant) seated behind the driver in the second row of seats. Adamescu approached the vehicle on the passenger side and noted the front-seat passenger was behaving suspiciously by bending and reaching around inside

the vehicle. Adamescu spoke to all three occupants and his suspicion increased because appellant was very nervous, breathing heavily, shaking, would not make eye contact, and spoke very quietly when questioned. Adamescu also noted the odors of burnt marijuana and raw marijuana emanating from inside the vehicle.

{¶6} Adamescu confirmed the identities of all three occupants. None had valid driving privileges and all three had suspended operators' licenses, so none of the occupants could have driven the SUV from the scene. The female front-seat passenger had a felony warrant from Huron County which officers sought to confirm during the stop.

{¶7} In the meantime, Ptl. Kaufman arrived on the scene with K-9 Denise. Adamescu returned to his cruiser to check the occupants' information and told Kaufman the stop was suspicious because the vehicle "reek[ed] of weed" and he suspected the occupants attempted to "stuff" items to hide them.

{¶8} Approximately nine minutes into the stop, still awaiting confirmation of the female passenger's felony warrant, Adamescu asked permission to search the SUV and the occupants declined. The officers decided to run K-9 Denise around the outside of the vehicle. First, the occupants were removed and patted down for officer safety. When asked whether Adamescu could search his pockets, appellant responded affirmatively but nothing was found.

{¶9} K-9 Denise indicated on the vehicle by barking erratically. Adamescu requested more units on scene because he now intended to search the vehicle. The driver, identified as [Bonds], and the female front-seat passenger, identified as Rowe, were placed together in the rear of Adamescu's cruiser by another officer.[1]

---

[1] Bonds was misidentified as "Brooks" at the first suppression hearing.

{¶10} During the vehicle search, a marijuana "roach" was found in appellant's door, where he had been seated, within his reach where his arm would have rested.

{¶11} Upon finding the "roach," Adamescu went back to appellant, who was cuffed and seated in a different cruiser, and told him he was under arrest for possession of marijuana, a first-degree misdemeanor in Mansfield. Appellant was therefore under arrest, and Adamescu warned him if the jail found anything else "on him" the offense would be conveying. T. Suppression I, 32.

{¶12} Adamescu testified the following factors along with his training and experience influenced his opinion that the stop was suspicious: it took the vehicle two blocks to pull over, he smelled the odor of marijuana emanating from the vehicle, the front-seat passenger made furtive movements and wouldn't tell Adamescu what she was doing, the backseat passenger (appellant) was shaking and wouldn't make eye contact, and the front-seat driver would not answer questions and was argumentative.

{¶13} Adamescu told Kaufman he was concerned the occupants were "stuffing" some type of contraband and believed they were potentially armed and dangerous; the driver was found to have a .22 pistol concealed between her breasts.

{¶14} All three occupants of the vehicle were arrested and transported to the Richland County Jail.

{¶15} Appellant testified briefly and said he did not feel free to refuse the pat down and did not receive any paperwork regarding a charge of marijuana possession.

*Suppression hearing of January 26, 2022*

{¶16} Adamescu was appellee's first witness and his testimony began with events following the arrest on May 19, 2020. Adamescu arrested appellant and he was

transported to the Richland County Jail in Ptl. Cikity's cruiser. Adamescu told appellant repeatedly that if anything was concealed on his person, he needed to disclose it to officers because he could be charged with a third-degree felony if contraband was brought into the jail. Adamescu testified appellant responded by looking away, starting to speak, then not saying anything at all.

{¶17} Adamescu believed appellant might be concealing contraband because the front-seat passenger had an active felony warrant for drug trafficking, the driver had multiple baggies of cocaine in her bra  and a loaded handgun, and appellant had marijuana on his side of the vehicle. These factors combined with appellant's obvious nervousness led to caution by the officers.

{¶18} Adamescu testified it is not unusual for him to suspect an arrestee is attempting to take items into the jail; routinely, the first thing he does is alert jail personnel of any concerns and asks them to conduct a more thorough search.

{¶19} Adamescu testified that the driver (Bonds) and front-seat passenger (Rowe) were seated together in the rear of his cruiser. He noticed Bonds took off her jacket and put it over the cruiser divider to block the view of what she was doing. Adamescu saw Bonds reach across Rowe and he ran to the cruiser and opened the door. Bonds then sat back down. Adamescu's concerns were heightened that the individuals were hiding drugs or attempting to destroy evidence. The officer testified these observations "raised alarms" regarding the traffic stop for all involved.

{¶20} Adamescu suspected appellant was in possession of drugs. He followed Cikity to the jail, removed appellant from the cruiser, took him into the jail through the sally port, and waited for jail staff to take over.  Corrections officers then removed the arrestees'

handcuffs, took everything out of their pockets, and brought them into the jail. At that point, Adamescu asked C.O. Sturgill for a more thorough search of appellant. He completed his own paperwork, left the jail, and was not present for the resulting search.

{¶21} C.O. Sturgill testified Mansfield Police Department brought appellant in and he performed a pat down. Adamescu told Sturgill he suspected appellant still had something on him. Sturgill testified his routine procedure in such a case is to notify his supervisor of the circumstances and the supervisor will determine whether permission for a strip search is warranted, which Sturgill then carries out.

{¶22} The procedure was followed in this case; Sgt. Aldridge was the supervisor involved. A strip search form was introduced as appellee's Exhibit 1; Sturgill testified he completed the form after the strip search was completed.

{¶23} After obtaining permission from Aldridge, Sturgill brought appellant into Bathroom One and started going through all extra clothing such as hoodies, socks, and shoes. Appellant said nothing until he was down to his t-shirt and underwear. At that time he said, "It's not worth it," placed his hand inside the front of his underwear, and drew out a bag of fentanyl that was rubber-banded to his genitals.

{¶24} Sturgill did not ask appellant to remove his underwear until after the fentanyl was handed over. Sturgill proceeded with the strip search, appellant removed his t-shirt and underwear, and no additional contraband was found. After the strip search was complete, Sturgill returned appellant's t-shirt and underwear and gave him a jail jumpsuit to wear. Appellant was then placed in a holding cell.

{¶25} Sturgill completed the strip search paperwork and made a copy for appellant, although he could not recall whether appellant accepted the copy in the holding cell or if he put it with appellant's property.

{¶26} Finally, before appellant entered the jail general population, he went through a scanner to detect "abnormal densities, substances, or bulges," to ensure he had no contraband or weapons hidden in his underwear or body cavities. Everyone admitted to the jail goes through this scanner.

*Indictment, motions to suppress, and plea of no contest*

{¶27} Appellant was charged by indictment with one count of illegal conveyance of drugs of abuse onto grounds of a specified governmental facility pursuant to R.C. 2921.36(A)(2) and R.C. 2921.36(G)(2), a felony of the third degree [Count I] and one count of possession of a fentanyl-related compound pursuant to R.C. 2925.11(A) and R.C. 2925.11(C)(11)(c), a felony of the third degree [Count II].

{¶28} Appellant entered pleas of not guilty.

{¶29} On April 22, 2021, appellant filed a motion to suppress. The matter proceeded to evidentiary hearing on May 19, 2021. On May 21, 2021, the trial court journalized its Judgment Entry Overruling Defendant's Motion to Suppress.

{¶30} On June 16, 2021, appellant filed a motion for reconsideration of the trial court's decision, arguing "the legality of the arrest was first brought to counsels (*sic*) attention the day of our motion hearing." Motion for reconsideration, 1. The motion argues appellant was illegally arrested and therefore the pat down of his person was not reasonable. Appellee filed a memorandum contra on June 30, 2021.

{¶31} On July 6, 2021, the trial court overruled appellant's motion for reconsideration.

{¶32} On October 4, 2021, appellant filed a motion to suppress pursuant to Crim.R. 12(C)(D).[2] The motion states in pertinent part:

> This matter is set for trial on October 11th at 9am. An evidentiary hearing will take less than an hour and could be done the morning of trial. This motion if granted, would dispose of the case and not require a jury trial. Counsel apologizes for the untimeliness but during his trial preparation a similar issue in another case brought it to my attention. I missed it at first because the police conduct was never categorized as a strip search in the discovery provided to counsel. In this case, it is clear, if it was a strip search the evidence should be suppressed. The only issue before this Court is whether the Defendant was arrested, and whether he was strip searched. Counsel assures this Court the filing of this motion is not to cause an

---

[2] Ohio Crim.R. 12(C) and (D) state the following in pertinent part:

> (C) Pretrial Motions. Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
> * * * *.
> (3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. Such motions shall be filed in the trial court only.
> * * * *.
> (D) Motion Date. All pretrial motions except as provided in Crim. R. 7(E) and 16(M) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions.

undue delay and is based on good faith. Counsel also contacted the prosecutor's office before the filing of this motion to discuss the issue. However, the only response was they would oppose instead of discussing the merits of the strip search issue.

{¶33} The case was then scheduled for an evidentiary hearing on the motion to suppress on November 17, 2021, and for jury trial on December 6, 2021.

{¶34} On November 10, 2021, appellee filed a memorandum in opposition to appellant's second motion to suppress.

{¶35} On November 24, 2021, appellee moved to join appellant's case with that of co-defendant Davionne Bonds for trial.

{¶36} On November 24, 2021, the trial court journalized its Judgment Entry Overruling Defendant's Motion to Suppress.

{¶37} On December 1, 2021, the trial court granted appellee's motion for joinder.

{¶38} On December 10, 2021, appellant filed "Defendant's Motion to Request Consideration to Defendants Motion to Suppress Dated September 30, 2021 and Request an Order Requiring the State to Provide Officer Personnel Files."

{¶39} On December 20, 2021, appellee filed a motion to hold defense trial counsel in contempt and a memorandum contra appellant's motion requesting further reconsideration of the strip search issue.

{¶40} On December 22, 2021, the trial court scheduled a hearing on all pending motions for January 26, 2022, and rescheduled the date for jury trial. In an entry dated January 20, 2022, the trial court noted both sides should subpoena necessary witnesses pertinent to appellant's second motion to suppress for the hearing on January 26. The

trial court further overruled appellant's motion for police personnel files and overruled appellee's motion to hold defense trial counsel in contempt.

{¶41} The matter proceeded to an evidentiary hearing on January 26, 2022, and the trial court overruled appellant's second motion to suppress by judgment entry filed January 31, 2022.

{¶42} On March 17, 2022, appellant filed a notice of substitution of counsel.

{¶43} On April 20, 2022, appellant appeared before the trial court and changed his previously-entered plea of not guilty to one of no contest to Count I and appellee dismissed Count II. The trial court accepted appellant's plea of no contest, found him guilty upon Count I, and scheduled sentencing for June 1, 2022.

{¶44} On June 1, 2022, the trial court sentenced appellant to a prison term of 18 months.

{¶45} Appellant now appeals from the trial court's Sentencing Entry of June 2, 2022.

{¶46} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶47} "I. THE TRIAL COURT ERRED IN DENYING MONEGAN'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE COURT SHOULD HAVE FOUND THAT THE DRUG EVIDENCE WAS FOUND AS A RESULT OF AN UNCONSTITUTIONAL ARREST."

{¶48} "II. THE DISTRICT COURT (*SIC*) ERRED IN DENYING MONEGAN'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM AN UNLAWFUL STRIP SEARCH."

**ANALYSIS**

**I., II.**

{¶49} Appellant's two assignments of error are related and will be addressed together. Appellant argues the trial court erred in overruling his motions to suppress because his arrest for marijuana possession was unconstitutional and the fentanyl was found as the result of an unlawful strip search. We disagree.

{¶50} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶51} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486,

597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶52} In his first assignment of error, appellant contends his arrest for a "minor misdemeanor offense" was unconstitutional. We disagree.

{¶53} Appellant was placed under arrest because he was in possession of a "marijuana roach" within the City of Mansfield. T. Suppression I, 10. Appellant was arrested pursuant to Mansfield Codified Ordinance 513.03(a) and (c)(2); those sections state in pertinent part:

> (a)   No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> * * * *.
>
> (c)(2) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marijuana other than hashish, whoever violates subsection (a) hereof is guilty of possession of marihuana. Possession of marihuana is a misdemeanor of the first degree if the amount of the drug involved does not exceed 200 grams.

* * * *.

{¶54} R.C. 2935.03 authorizes a municipal police officer to arrest and detain a person violating a state law or municipal ordinance. Appellant was arrested for violation of the municipal ordinance.  T. Suppression I, 10, 31-32, 48-49, 57-58; T. Suppression II, 91-92; 98.

{¶55} Pursuant to R.C. 2925.11(C)(3)(a), possession of less than one hundred grams of marijuana is a minor misdemeanor. Generally, an officer shall not arrest an offender for commission of a minor misdemeanor. See, R.C. 2935.26(A). Appellant contends that the disparity between the state code and the municipal ordinance create an irreconcilable conflict which should be resolved in his favor.

{¶56} Appellant repeatedly contends he was illegally arrested upon a "minor misdemeanor," but he was lawfully arrested upon a first-degree misdemeanor.  In *City of Niles v. Howard*, 12 Ohio St.3d 162, 466 N.E.2d 539 (1984), the Ohio Supreme Court examined a city ordinance which declared marijuana possession to be a first degree misdemeanor when the state statute defining the same crime declared the offense to be a minor misdemeanor—the same offense at issue here. The Court cited *Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923), and stated that an ordinance does not conflict with general law simply because different penalties are provided for the same offenses, even if the ordinance imposes greater penalties. *Id.* at 165. An ordinance does not conflict with general law where it merely increases an offense defined by state law from a minor misdemeanor to a first degree misdemeanor. *Id.*

{¶57} *Niles* has not been overruled. The same issue of steeper penalties for municipal marijuana ordinances has been litigated in several appellate districts, including

this one; municipal ordinances which raise the misdemeanor level of marijuana possession do not conflict with state law. *State v. Schaefer*, 5th Dist. Ashland No. 01COAA01435, 2002-Ohio-726, 2002 WL 220943 (Feb. 11, 2002) [Ashland City Ordinance 513.03(C)(2) makes possession of marihuana under two hundred grams a misdemeanor of the fourth degree; "[w]e find no need to revisit this issue as we are required to follow and give due deference to the precedent set by the Supreme Court of Ohio."]; *State v. Creamer*, 1st Dist. Hamilton No. C-060568, 2007-Ohio-5125, ¶ 2 [Cincinnati Municipal Code 910-23 made possession of less than 200 grams of marijuana within the city a fourth-degree misdemeanor and subsequent violations are first-degree misdemeanors]; *Medina v. Szwec*, 157 Ohio App.3d 101, 2004-Ohio-2245, 809 N.E.2d 78, ¶ 7 (9th Dist.) [ordinance makes possession or use of less than 100 grams of marijuana a first-degree misdemeanor and imposes three-day mandatory period of incarceration for the first conviction; "this court will follow and give due deference to the precedent set by the Supreme Court, as the rationale in *Niles* is the prevailing law in Ohio;" ordinance not in conflict with general laws of Ohio].

{¶58} While acknowledging *Niles,* appellant argues the ordinance impermissibly conflicts with the statute because the ordinance permits an officer to effectuate an arrest when the statute requires a citation. Again, the different outcomes do not place the ordinance in conflict with the general law. The difference between a citation and an arrest was examined by the Sixth District Court of Appeals in *State v. Ruffer*, 6th Dist. Fulton No. F-11-007, 2012-Ohio-4491; in that case, the distinction between charging the defendant under the ordinance versus citing him pursuant to the statute was

consequential because the former extended the length of a reasonable period of detention during a traffic stop:

> The state distinguishes the ordinance from R.C. 2925.11(C)(3) in that the state statute makes possession of marijuana a minor misdemeanor unless the amount exceeds 100 grams and is less than 200 grams. The distinction is significant, because R.C. 2935.26(A) requires a law enforcement officer to issue a citation rather than arrest persons for commission of a minor misdemeanor except in specified circumstances listed under R.C. 2935.26(A). *State v. Brown,* 99 Ohio St.3d 323, 2003–Ohio–3931, 792 N.E.2d 175, ¶ 8–15. The Ohio Supreme Court has held that municipalities have authority to raise by local ordinance the penalty for possession of marijuana from a minor misdemeanor to a misdemeanor of a higher degree. *Niles v. Howard,* 12 Ohio St.3d 162, 165, 466 N.E.2d 539 (1984)(upheld ordinance making the offense a first degree misdemeanor).

> * * * *.

> We agree with the state that appellant's statement concerning a roach in the ashtray of the pickup provided additional facts giving rise to a reasonable, articulable suspicion of criminal activity. Appellant's admission as to marihuana acted to extend the reasonable duration of the vehicle stop for further investigation and the arrest of appellant on drug charges.

State v. Ruffer, 6th Dist. Fulton No. F-11-007, 2012-Ohio-
4491, ¶ 23, 32.

{¶59} In the instant case, appellant was charged with a first-degree misdemeanor for marijuana possession, thereby authorizing his arrest pursuant to R.C. 2935.03. The trial court did not err in overruling the motion to suppress on the basis of appellant's arrest.

{¶60} Appellant's first assignment of error is overruled.

II.

{¶61} In his second assignment of error, appellant argues he was subjected to an unlawful strip search. We disagree.

{¶62} R.C. 2933.32(A)(1) defines a "strip search" as "an inspection of the genitalia, buttocks, breasts, or undergarments of a person that is preceded by the removal or rearrangement of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, or undergarments and that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any other manner while the person is detained or arrested for the alleged commission of a misdemeanor or traffic offense.

{¶63} Pursuant to R.C. 2933.32(B)(2), a strip search may be conducted if a law enforcement officer has probable cause to believe that the person is concealing evidence of the commission of a criminal offense, including fruits or tools of a crime, contraband, or a deadly weapon, as defined in section 2923.11 of the Revised Code, that could not otherwise be discovered. In determining probable cause, the officer "shall consider the nature of the offense with which the person to be searched is charged, the circumstances of the person's arrest, and, if known, the prior conviction record of the person." Id.

{¶64} Probable cause is defined as "a reasonable ground of suspicion supported by facts and circumstances sufficiently strong in themselves to warrant a prudent person in believing an accused person had committed or was committing an offense." *State v. Wesley*, 5th Dist. Stark No. 1999CA00226, 2000 WL 329938, *4, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Ratcliff*, 95 Ohio App.3d 199, 205, 642 N.E.2d 31 (5th Dist.1994).

{¶65} The record in this matter contains testimony to support a finding of probable cause to conduct the strip search. See, *Wesley,* supra [defendant moving around in cruiser and placing hands in pants supported officer's strong suspicion he was stuffing contraband in his pants]. As discussed supra appellant was arrested for possession of marijuana, a violation of the Mansfield City Ordinance, a first-degree misdemeanor. The marijuana roach was found inside the SUV within his reach. Adamescu testified to the suspicious circumstances of the stop: the SUV did not stop immediately; the driver was argumentative and refused to answer questions; the front-seat passenger had an active felony warrant for drug trafficking; the driver was found to be concealing cocaine and a firearm in her bra; the driver and front-seat passenger behaved suspiciously inside the cruiser when seated together as though hiding something or destroying evidence; and appellant was visibly nervous. Adamescu told Kaufman of his suspicion that the occupants of the vehicle were "stuffing" something; the nature of the contraband remained to be determined, and then K-9 Denise indicated on the vehicle.

{¶66} The trial court did not err in overruling appellant's motion to suppress on the basis of the strip search which was supported by probable cause that appellant concealed contraband on his person.  Appellant's second assignment of error is overruled.

## CONCLUSION

{¶67} Appellant's two assignments of error are overruled and the judgment of the

Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

King, J., concur.