OPINION. *Page 2 
{¶ 1} Raising a single assignment of error, defendant-appellant Kevin Creamer appeals from the conviction and sentence imposed by the Hamilton County Municipal Court after it had overruled his motion to dismiss a charge of marijuana possession, in violation of Cincinnati Municipal Code 910-23. Creamer argues that the ordinance, which imposes a potentially more severe sanction than the state possession statute, was enacted in violation of Section 3, Article XVIII, Ohio Constitution. He also asserts that the city selectively and arbitrarily enforced the ordinance. Because the ordinance only imposes a greater penalty than the state statute without altering the degree of punishment to a felony, and because Creamer was unable to show that his prosecution was deliberately based upon an unjustifiable standard such as race, religion, or some other arbitrary classification, we affirm.
 {¶ 2} On March 29, 2006, in response to increased "open-air drug dealing," the Cincinnati City Council enacted Cincinnati Municipal Code 910-23 as "an emergency measure necessary for the preservation of the public peace, health, safety, and general welfare" of its citizens.[1]
The ordinance made possession of less than 200 grams of marijuana within the city punishable as a fourth-degree misdemeanor.[2] A subsequent violation of the ordinance would be punished as a first-degree misdemeanor.[3]
 {¶ 3} The punishments imposed under Cincinnati Municipal Code 910-23 vary from those imposed under state statute. R.C. 2925.11(C)(3)(a) specifies that the possession of less than one hundred grams of marijuana is a minor misdemeanor. A minor misdemeanor is punishable by a fine not to exceed $150; a fourth-degree *Page 3 
misdemeanor is punishable by a maximum sentence of 30 days' incarceration and a fine not to exceed $250.
 {¶ 4} On April 17, 2006, Creamer was charged with possession of marijuana under the ordinance. After two lengthy hearings, the trial court overruled his motion to dismiss. Following a bench trial on stipulated facts, the court found Creamer guilty of possession of marijuana under the ordinance, imposed a sentence of $20 plus costs, and stayed the sentence pending this appeal.
 {¶ 5} On appeal, Creamer first contends that the trial court erred in overruling the motion to dismiss because the city's possession ordinance is in conflict with R.C. 2925.11(C)(3)(a) and therefore violates Section3, Article XVIII, Ohio Constitution. That section of what is known as the Home Rule Amendment provides, "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Thus, Creamer asserts that the ordinance is unconstitutional because it provides for a potentially more severe sanction than the general state law.
 {¶ 6} But this argument has been rejected by the Ohio Supreme Court.[4] In Niles v. Howard, the court declared, "When a municipal ordinance varies in punishment with the state statute such ordinance is not in conflict with the statute when it only imposes a greater penalty. If the Niles ordinance had altered the degree of punishment to a felony rather than a misdemeanor it would have been unconstitutional. However, since the ordinance only increased the penalty from a lesser misdemeanor to a first degree misdemeanor, it is not in conflict with the general laws of Ohio."[5] *Page 4 
 {¶ 7} A conviction under Cincinnati Municipal Code 910-23 only increases the penalty from a minor misdemeanor to a higher-level misdemeanor; it does not alter the degree of punishment to a felony. Thus the ordinance is not in conflict with R.C. 2925.11 — a general law of Ohio.[6]
 {¶ 8} Creamer next argues that the 23 years since the release of theNiles decision have seen a dramatic expansion of the collateral, or indirect, consequences that accompany a conviction for any non-minor misdemeanor.[7] Unlike the direct consequences of a conviction — imprisonment or a fine — collateral consequences "are not part of the explicit punishment handed down by the court; they stem from the fact of conviction rather than from the sentence of the court. * * * These sanctions flow from both felony and misdemeanor convictions, irrespective of whether the defendant was sentenced to a term of imprisonment."[8]
 {¶ 9} For those convicted of misdemeanor offenses, the collateral consequences of conviction may be the most persistent punishments inflicted for their offenses. Among the consequences that could flow from punishment for a non-minor misdemeanor, but would not attend a conviction for a minor misdemeanor, are in eligibility for expungement of a previous or future charge;[9] disqualification for a permit to carry a concealed firearm;[10] and deportation, exclusion, or denial of naturalization for a noncitizen offender.[11] *Page 5 
 {¶ 10} Creamer asserts that these collateral consequences have negated the factual predicate of the Niles decision: that the relatively minor impact of elevating the punishment for an offense from a minor misdemeanor to a higher-level misdemeanor does not change "the degree of punishment" for an offense.[12] Thus the city ordinance would be in conflict with a general law because it effectively increases not only the penalty for possession but also the classification of the penalty from a relatively consequence-free minor misdemeanor to a higher-level misdemeanor offense to which a network of civil and criminal sanctions attaches.
 {¶ 11} None of the appellate courts in Ohio that have reviewed similar municipal enactments elevating the punishment for minor misdemeanors have adopted these arguments.[13] No matter how compelling Creamer's collateral-consequences argument may be, as an Ohio court inferior to the Ohio Supreme Court, we are required to follow its mandates; we do not have the authority to overrule a decision of the Ohio Supreme Court that is on point with the case before us.[14]
 {¶ 12} Finally, Creamer argues that the trial court erred in overruling his motion to dismiss because he was the victim of a selective or discriminatory prosecution in violation of his right to the equal protection of the laws. Even if an ordinance appears fair on its face, unequal application by a public authority may result in illegal discrimination between persons in similar circumstances.[15] Creamer asserts that Cincinnati Municipal Code 910-23 permits police officers to arbitrarily and inconsistently choose to charge individuals under the enhanced city ordinance or to *Page 6 
proceed under the state statute, resulting in a disparate impact in sentencing. In support of this argument, Creamer introduced evidence in the trial court that one-half of the persons arrested for drug possession between March and May 2006 were charged with violating the city ordinance, and the remainder were charged under R.C. 2925.11.
 {¶ 13} As this court noted in State v. Norris, "there is * * * a `strong presumption of regularity' in prosecutorial discretion. A defendant asserting a violation of the right to equal protection because of selective prosecution `bears a heavy burden.' The right is not violated simply because others similarly situated are not prosecuted for similar conduct. The standard is `intentional and purposeful discrimination.'"[16]
 {¶ 14} To prevail on his claim of discriminatory selective prosecution, Creamer first had to show that others similarly situated had not generally been prosecuted for conduct similar to that forming the basis of the charge against him.[17] Next he had to show that the selective prosecution was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."[18]
 {¶ 15} Creamer failed to prove the second element. There was no evidence to suggest that police had singled him out for prosecution under the ordinance because of any arbitrary classification. There was no evidence that suggested that defendants of different races were prosecuted differently or that residents of various areas of the city were subject to differing charges under the two laws. "Absent some demonstration of an invidious motive, this court will not presume intentional or purposeful discrimination from a mere showing of different treatment."[19] Indeed Creamer's evidence indicated that, *Page 7 
during the noted monthly periods, prosecutions under the city ordinance were increasing as police officers became more familiar with the new ordinance and began to enforce it more uniformly.
 {¶ 16} As Creamer was unable to demonstrate any arbitrary classification by police officers, he did not carry his heavy burden of demonstrating a selective prosecution in violation of his constitutional rights.
 {¶ 17} The assignment of error is overruled. Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
HENDON, P. J., and DINKELACKER, J., concur.
[1] Cincinnati Municipal Code 910-23, Section 5.
[2] See Cincinnati Municipal Code 910-23(B).
[3] See id.
[4] See Niles v. Howard (1984), 12 Ohio St.3d 162, 466 N.E.2d 539; see, also, Medina v. Szwec, 157 Ohio App.3d 101, 2004-Ohio-2245,809 N.E.2d 78, appeal denied, 103 Ohio St.3d 1462, 2004-Ohio-5056,815 N.E.2d 678, and 103 Ohio St.3d 1463, 2004-Ohio-5056,815 N.E.2d 679.
[5] Niles v. Howard, 12 Ohio St.3d at 165, 466 N.E.2d 539.
[6] See id. at 164, 466 N.E.2d 539 ("The drug laws of the state of Ohio are clearly statutes setting forth police regulations and are, therefore, `general laws.'").
[7] See Chin and Holmes, Effective Assistance of Counsel and the Consequences of Guilty Pleas (2002), 87 Cornell L.Rev. 697.
[8] Pinard, An Integrated Perspective on the Collateral Consequences of Criminal Convictions and Reentry Issues Faced by Formerly Incarcerated Individuals (2006), 86 B.U.L.Rev. 623, 634-635 (citations omitted).
[9] See R.C. 2925.11; see, also, Medina v. Hannan,124 Ohio Misc.2d 37, 2003-Ohio-3923, 792 N.E.2d 1141, at ¶ 18.
[10] See R.C. 2023.125.
[11] See R.C. 2943.031; see, also, State v. Yanez,150 Ohio App.3d 510, 2002-Ohio-7076, 782 N.E.2d 146.
[12] Niles v. Howard, 12 Ohio St.3d at 165, 466 N.E.2d 539.
[13] See Mentor v. Melnick (July 25, 1986), 11th Dist. No. 11-122;Akron v. Ross (July 11, 2001), 9th Dist. No. 20338; Medina v.Ratkowski (Mar. 14, 2001), 9th Dist. No. 3075-M; State v.Schaeffer, 5th Dist. No. 01COAA01435, 2002-Ohio-726; and Medina v.Szwec, 2004-Ohio-2245 (9th District).
[14] See State v. Bruce, 170 Ohio App.3d 92, 2007-Ohio-175,866 N.E.2d 44, at ¶ 6.
[15] See State v. Norris, 147 Ohio App. 3d 224, 228, 2002-Ohio-1033,769 N.E.2d 896, citing Yick Wo v. Hopkins (1886), 118 U.S. 356, 374, 6 S.Ct. 1064.
[16] 147 Ohio App.3d at 229, 2002-Ohio-1033, 769 N.E.2d 896 (internal citation omitted).
[17] See id.; see, also, State v. Flynt (1980), 63 Ohio St.2d 132,134, 407 N.E.2d 15.
[18] See id., quoting, Cleveland v. Trzebuckowski, 85 Ohio St.3d 524,532, 1999-Ohio-285, 709 N.E.2d 1148; see, also, State v. Flynt,63 Ohio St.2d at 134, 407 N.E.2d 15.
[19] State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128,767 N.E.2d 166, at ¶ 46. *Page 1